**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND BALESTRA, | ) | Civil Action No. 18-0804 |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | District Judge Hornak |
| | ) | |
| v. | ) | Magistrate Judge Lenihan |
| | ) | |
| CLOUD WITH ME LTD., | ) | |
| GILAD SOMJEN, and ASAF ZAMIR | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | ECF No. 29 |

## REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that the Motion to Set Aside Default Judgement and Dismiss Asserted by Defendant Zamir (ECF No. 29) be denied.

### II.     REPORT

####      A.      <u>Facts</u>

Plaintiff Raymond Balestra, individually and on behalf of all other individuals and entities similarly situated, seeks to recover for alleged violations of the Securities Act of 1933 ("Securities Act"), specifically 15 U.S.C. §§ 77l(a)(1) & 77o(a). Complaint, ECF No. 1 ¶ 1. Plaintiff alleges that, through an initial coin offering ("ICO"), Defendants Cloud With Me, Somjen (that company's CEO), and Zamir (that company's CTO), in violation of the Securities Act, sold an unregistered security ("CLD tokens") for the purpose of raising capital "to fund the creation of a decentralized 'cloud' network." Complaint, *Id.* ¶¶ 2, 3. Plaintiff alleges that the ICO

began on July 25, 2017, is ongoing, and to date, has raised at least $10 million (which notably, is far less than the $300 million Defendants sought). *Id.* ¶¶ 2, 7.

According to Defendants' white paper (an explanatory document published in connection with the ICO), the CLD tokens would essentially function as a form of digital currency to be used within and in conjunction with the "decentralized cloud network" they sought to create. *Id.* ¶ 4. Plaintiff alleges that Defendants made representations that the value of CLD tokens would rise once the cloud network was created and demand for them increased. *Id.* ¶ 6.

Plaintiff asserts that the ICO was (and continues to be) an offer and sale of securities that—given Defendants' failure to register those securities—constitutes a violation of 15 U.S.C. § 77e(a). *Id.* ¶¶ 9, 13. Plaintiff further alleges that, to date, Defendants have failed to construct the decentralized cloud network that was the impetus for this entire venture, and as a result, the CLD tokens purchased by Plaintiff have not only failed to increase in value, but have become nearly worthless. *Id.* ¶¶ 11, 18.

Plaintiff filed this action on June 19, 2018. Complaint, ECF No. 1. On May 3, 2019, the Clerk of Court for the Western District entered defaults against all three Defendants for failure to appear, answer, or otherwise plead. ECF Nos. 17, 18, 19. On October 7, 2020, Defendant Zamir filed the instant motion to set aside default. ECF No. 29. Plaintiffs filed their Brief in Opposition on November 9, 2020 (ECF No. 31) and Zamir filed a Reply on November 23, 2020. ECF No. 34.

B.    Legal Standard

Fed. R. Civ. P. 55(c) governs a request to set aside the entry of default. It simply states that a "court may set aside an entry of default for good cause . . . ." The decision to set aside the entry of default is within the discretion of the district court. *Bailey v. United Airlines,* 279 F.3d

2

194, 204 (3d Cir. 2002). The Third Circuit has instructed that courts must liberally construe a

motion to set aside an entry of default with an eye toward resolving litigation on the merits. *Hritz*

*v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984). The Circuit has established three factors for

a district court to consider in deciding whether to set aside a default: "1) whether the plaintiff

will be prejudiced; 2) whether the defendant has a meritorious defense; 3) whether the default

was the result of the defendant's culpable misconduct." *World Entm't Inc. v. Brown*, 487 F.

App'x 758, 761 (3d Cir. 2012). "Failure to establish a meritorious defense weighs heavily

against setting aside the default" and is therefore construed as a threshold issue. *Id.* (citing

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 197 (3d Cir. 1984) (referring to

whether or not a meritorious defense has been established as a "threshold question")); *see also*

*Empire Fire & Marine Ins. Co. v. Gutema*, No. CV 18-1396, 2019 WL 1243456, at *3 (W.D. Pa.

Mar. 18, 2019) (agreeing that in *$55,518.05* the Third Circuit "ruled that the establishment of a

meritorious defense is a requirement for opening both a default and a default judgment.").

      C.    <u>Analysis</u>

As an initial matter, it must be clarified that while there has been an entry of default, no

default judgement has been entered in this case. Nevertheless, the instant motion is captioned

"Motion to Set Aside Default Judgment and to Dismiss Pursuant to Rules 12(b)(2) and (5) of

Defendant Zamir," and contains therein several references to Fed. R. Civ. P. 60(b)(4). ECF No.

29. That rule governs "Grounds for Relief from a Final Judgement, Order, or Proceeding."

Because no final judgement has been entered in this case, Defendant's references pertaining to

"default judgment" and Rule 60(b)(4) are wholly irrelevant. Defendant's motion argues for the

setting aside of default and default judgement in tandem, and in doing so does contain references

to (the appropriate) Fed. R. Civ. P. 55(c). This Report will focus on Defendant's relevant Rule 55(c) arguments, and where applicable, attempt to construe in good faith his 60(b)(4) arguments.

Defendant's motion consists of two lines of argument: that this court lacks personal jurisdiction over him pursuant to Rule 12(b)(2), and that Plaintiff failed to effect sufficient service of process pursuant to Rule 12(b)(5).

### i.    Personal Jurisdiction

Defendant correctly observes that, under Third Circuit precedent, "[a] judgment is void within the meaning of Rule 60(b)(4) if the court that rendered it lacked personal jurisdiction over the defendant." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). However, as discussed above, the application of Rule 60(b)(4) is not appropriate here, and Defendant makes no reference to Rule 55(c) in his personal jurisdiction argument.

An attempt to construe Defendant's argument under the correct standard would find it most comfortably falling within the "meritorious defense" prong of the 55(c) inquiry, as personal jurisdiction does not implicate prejudice to Plaintiff nor the culpability of Defendant's conduct resulting in default. Because a successful 12(b)(2) motion can result in dismissal of a claim, a lack of personal jurisdiction would clearly qualify as a "meritorious defense" under 55(c). *See* *§55,518.05*, 728 F.2d at 195 ("[D]efendant established a meritorious defense because its allegations, if established at trial, would constitute a complete defense."). Yet, even with the assistance of this remedial shoehorning, Defendant's personal jurisdiction defense would fail on its merits, as both of his arguments are ultimately irrelevant.

First, Defendant claims a lack of minimum contacts with the forum state of Pennsylvania. In support, Defendant quotes a fragment of a sentence (defining specific jurisdiction) from the "Background" section of *Pinker v. Roche Holdings Ltd.* ECF No. 29 at 9.  This is Defendant's

4

sole reference to *Pinker*, but even the most cursory reading of that case reveals that its substantive text completely undermines Defendant's argument. In *Pinker*, the Third Circuit reviewed a district court's decision to grant defendant's motion to dismiss for, inter alia, a lack of personal jurisdiction. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 365 (3d Cir. 2002). The defendant in that case was also a foreign company accused of violating provisions of the Securities Act. *Id.* at 366, 369. *Pinker* unequivocally states that "[w]here Congress has spoken by authorizing nationwide service of process, therefore, as it has in the Securities Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Id.* at 369; *cf.* 15 U.S.C. §§ 77v (a) & (c) (provisions of the Securities Act governing jurisdiction and service of process). Accordingly, the court went on to "hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's *national contacts* when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Pinker*, 292 F.3d at 369 (emphasis added); *see also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020) ("[W]e are not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole . . . . [T]his inquiry focuses less on federalism concerns and more on the national interest in furthering the policies of the federal statute at issue."); *S.E.C. v. Queri*, No. 08CV1367, 2009 WL 186017, at *6 (W.D. Pa. Jan. 26, 2009) ("[A] court should look at the extent to which the defendant 'availed himself of the privileges of American law and . . . could reasonably anticipate being involved in litigation in the United States.'" (quoting *Pinker*, 292 F.3d at 370)).

Proceeding under the incorrect standard, defendant focuses his minimum contacts analysis entirely on the Commonwealth of Pennsylvania. In doing so, he fails to refute or even acknowledge the numerous allegations set out in the Complaint establishing Defendants'

contacts with (and intent to avail themselves of) the United States generally. Where, as here, an evidentiary hearing is not held on a 12(b)(2) motion, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the [forum].'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (other citation omitted).

While the complaint and Plaintiff's brief in response to the instant motion discuss a number of actions taken by Defendant demonstrating purposeful availment of the United States generally, two of them are particularly convincing. First, during the ICO, Defendants provided for the purchase of CLD tokens "payable in [two different cryptocurrencies] in *North America* and via credit cards and bank wire transfers elsewhere." Complaint, ECF No. 1 ¶ 7 (emphasis added). Second, Defendant's white paper contained the following disclaimer:

> THE TOKENS REFERRED TO IN THIS WHITE PAPER HAVE NOT BEEN REGISTERED, APPROVED, OR DISAPPROVED BY THE US SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION IN THE UNITED STATES OR ANY OTHER REGULATORY AUTHORITY NOR HAVE ANY OF THE FOREGOING AUTHORITIES EXAMINED OR APPROVED THE CHARACTERISTICS OR THE ECONOMIC REALITIES OF THIS TOKEN SALE OR THE ACCURACY OR THE ADDEQUACY [sic] OF THE INFORMATION CONTAINED IN THIS WHITE PAPER UNDER, THE U.S. SECURITIES ACT OF 1933 AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OF AMERICA OR ANY OTHER JURISDICTION.

*Id.* ¶ 39.

Given these overt references to North America, the SEC, and the Securities Act, (and ignoring, momentarily, the fact that Defendant has not acknowledged them in his discussion of personal jurisdiction) any hypothetical argument against minimum contacts and purposeful availment with the U.S. would require the court to accept that Defendant intended to sell CLD tokens to residents of North America generally, but *not* within the U.S., which would then beg the question of why Defendant's white paper included explicit references to an American federal agency and law.

In addition, Defendant "anticipates that plaintiff [sic] will argue that the jurisdictional contacts of [Defendant Cloud With Me] should be attributed to him, making him liable to suit in Pennsylvania." ECF No. 29 at 10. Defendant goes on to discuss why Plaintiff will fail to "pierce the corporate veil on an alter ego theory" and attribute Defendant Cloud With Me's contacts to him. ECF No. 29 at 11 & n.1. The Securities Act itself establishes liability for anyone who "controls any [company] liable under [§ 77l] . . . unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the [company] is alleged to exist." 15 U.S.C. § 77o(a). No "piercing of the corporate veil" is necessary to establish Defendant's liability under the Securities Act, and it is simply unreasonable to assert that Defendant, as co-founder and CTO, was entirely unaware and uninvolved with his own company's actions that targeted the United States and profited from CLD tokens sold to its citizens. This is not an "attribution" of Cloud With Me's contacts to Defendant, but rather an acknowledgment that those contacts are all one and the same.

Admittedly, this is a close issue, as Plaintiff's complaint does not take pains to distinguish between the actions of each of the three Defendants that constitute contact with the

United States, and Defendant's motion and brief do not specifically deny knowledge or participation in those actions. The D.C. District Court provided a helpful survey of the case law in this area in *In re Baan Co. Securities Litigation*, 81 F. Supp. 2d 75 (D.D.C. 2000). The minority position, discussed therein, is that personal jurisdiction may be exercised over any "controlling person" as defined by the Securities Act. *In re Baan*, 81 F. Supp. 2d at 81 (citing *San Mateo Cty. Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356, 1369 (9th Cir. 1992) ("If the suit is to enforce a liability created by the Securities Act, the court has jurisdiction of the defendant wherever he may be found.")). The majority position sees this is as unwarranted, and requires more, namely the familiar showing that "the defendant has, by his acts, purposefully availed himself of the forum's benefits." *Id.* at 81-82 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987)). In most of the cases discussed, that showing involved making financial misrepresentations and signing documents that were eventually filed with the SEC. *Id.* at 79-81. This is somewhat unhelpful in the instant case where Defendants' alleged violation of the Securities Act is predicated on an *omission*: their failure to register what Plaintiff alleges was, in fact, a security.

The Supreme Court offered some guidance in *Calder v. Jones*, where it held that personal jurisdiction could be exercised over two Florida residents in California state court, and in so doing rejected the petitioners' argument that, because they lacked a "direct economic stake in their employer's sales in a distant [forum]" they could not be haled into court there. *Calder v. Jones*, 465 U.S. 783, 789 (1984). The Court noted that while the petitioners "are not to be judged according to their employer's activities [in the forum]. . . . [T]heir status as employees does not somehow insulate them from jurisdiction" and went on to state that because they were "*primary*

*participants in an alleged wrongdoing* intentionally directed at a California resident" the minimum contacts analysis was satisfied. *Id.* at 790 (emphasis added).

As with the petitioners in *Calder*, Defendant is not insulated from jurisdiction in the United States merely by virtue of his status as an employee of Cloud With Me. Defendant founded that company, served as its CTO, and was therefore unquestionably involved in the alleged wrongdoing. *See Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) ("employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." (citing *Calder*, 465 U.S. at 790.)).

Plaintiff's allegations have with reasonable particularity established Defendant's contact with the United States by demonstrating his status as a primary participant in conduct violating the Securities Act. It is beyond the pale to argue, as Defendant seems to, that individuals may violate American law and then trivially avoid liability simply because the violation was made under the guise of their *own* company or by virtue of not having directly contacted the *state* where a plaintiff brings their action. Indeed, were Defendant's arguments to have merit, it is not clear that he would be subject to liability *anywhere*.

### ii. Insufficient Service of Process

In cooperation with both a solicitor and a summons server in Ireland, Plaintiff attempted to effect personal service on all three Defendants at their respective addresses there. First Affidavit of Service, ECF No. 9. Plaintiff's solicitor conducted a search at the Companies Registration Office of Ireland ("CRO"), yielding a registered address for each Defendant. Second Affidavit of Service, ECF No. 10 ¶¶ 4, 8. Personal service failed at all three locations. ECF No. 9

¶¶ 5, 9, 13. At Defendant Zamir's registered home address, an unidentified man told the process server through an intercom that no one by that name lived there. *Id.* ¶ 5. At Defendant Somjen's registered home address, Plaintiff's process server was unable to speak to *anyone* during four separate visits. *Id.* ¶¶ 6-9. At Defendant Cloud With Me's registered address, the process server was told by a receptionist that neither of the individual Defendants worked there, and that "while [Defendant Cloud With Me] may officially be registered [there], [it] does not have an operating business presence at that address." *Id.* ¶ 13.

Following the failure of personal service, Plaintiff's solicitor served all three Defendants via pre-paid registered post at their addresses listed with the CRO. ECF No. 10 ¶¶ 13, 16. The documents sent to Defendants Zamir and Somjen's home addresses were returned as undelivered, at which time Plaintiff's solicitor sent them to their last known place of business, i.e., the address registered to Defendant Cloud With Me. *Id.* ¶¶ 17, 18. None of the three sets of documents mailed to Defendant Cloud With Me's registered address were returned. *Id.* ¶¶ 14, 19.

Defendant argues that, following the failure of personal service on him at his registered business address, service by mail to that same address could not meet the standard of being "reasonably calculated . . . to apprise interested parties of the pendency of the action." ECF No. 29 at 14 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Defendant is essentially arguing that, once in possession of "actual knowledge" that he could not be reached at either his registered home address or the registered address of his business, Plaintiff's service by mail was not in good faith, and that this "knowing insufficiency" constitutes good cause for setting aside default. This argument is unconvincing for several reasons.

10

First, even if service on Defendant was found to be insufficient, that would not constitute a meritorious defense. *See Umbenhauer v, Woog*, 969 F.2d 25, 30 (3d Cir. 1992) ("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained . . . the district court should, at most, quash service, leaving the plaintiffs free to effect proper service."); *see also* ECF No. 29 at 16 ("Plaintiff . . . can [still] perfect service on Mr. Zamir in Switzerland.").

Second, even accepting Defendant's premise, it is unclear that the failure of personal service necessarily provides a plaintiff with actual knowledge that service at that address is impossible, particularly where, as here, Plaintiff's subsequent service by registered mail was delivered and *not returned*.

Finally, the Federal Rules provide that "an individual . . . may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1). Article 10 of the Hague Convention allows for service by mail. *See Water Splash, Inc. v. Menon*, 581 U.S. __, 137 S. Ct. 1504 (2017). Ireland's declaration against Article 10 permits service of foreign judicial proceedings in accordance with Irish law. ECF No. 10 ¶ 6. Under Ireland's Superior Courts Rules, service of summons may be effected "by the sending of a copy of the summons by registered prepaid post in an envelope addressed to the person to be served at his last known residence *or place of business* in the State." Irish Superior Courts Rules Order 9, rule 2(1)(iii), www.courts.ie/rules/service-summons (emphasis added). Additionally, sections 50 and 51 of the Irish Companies Act of 2014 require, respectively, that companies "shall, at all times, have a registered office in the State to which all communications and notices may be addressed" and that service may be effected on a company

by "sending it by post to the registered office of the company[.]" Companies Act 2014 (Act No. 38/2014) (Ir.), www.irishstatutebook.ie/eli/2014/act/38/enacted/en/print.

While it is unclear what more could have been done to effect service on Defendant, it is undisputed that Plaintiff's service comported with the Federal Rules, and pursuant to them, the Hague Convention and Irish law. Not only do the Federal Rules explicitly endorse service under the Hague convention as being reasonably calculated to give notice, but Irish law places an affirmative obligation on companies to maintain an office, registered with the CRO, where service may be effected. Taken together, it is unclear why Plaintiff's legally valid service, by registered mail, to an address *provided by Defendants*, should be invalidated by his prior attempt to effect a more thorough and expensive form of service. *See Moody Nat'l FFI Meadowlands MT, LLC., v. Gager*, No. 12-2124, 2013 WL 622128, at *9 (D.N.J. Jan. 24, 2013) (finding that prior failed attempts at personal service did not invalidate subsequent and otherwise valid service by mail under Article 10).

Moreover, Defendants' website continues to reflect the same address that is registered with the CRO, and states that Cloud With Me is "based in" Dublin, Ireland. Plaintiff's Brief in Response, ECF No. 31, at 10 n.8; cloudwith.me/about; *see also* cloudwith.me/contacts. Do the Defendants no longer operate their business at that address? If so, why was none of the service sent by registered mail to that address not returned? Why have they failed, in violation of Irish law, to update their registered address with the CRO? Why do they continue, more than two years after personal service failed at that address, to hold it out as valid on their own website?

Defendant's motion provides no answers to these questions, offering only the threadbare musing that Plaintiff "might have reasonably expected that [Defendant] would work remotely" and that, because Defendant currently resides in Switzerland, it is "unlikely that his principal

place of business really is in Ireland." ECF No. 29 at 15. Defendant offers no explanation for how or why Plaintiff should have been aware that he now lives in Switzerland. ECF No. 31, at 11 n.11 ("Defendant Zamir provided no forwarding address for himself nor his company . . . following his move from Dublin Ireland to Switzerland in March of 2018 and does not claim to have notified any relevant authority of his move.").

As with his personal jurisdiction argument, taking Defendant's assertions to their logical conclusion yields another absurd result: that any company can easily evade service by simply *claiming* to not be present at its *advertised* and *registered* address. Short of employing a globe-trotting private investigator to track down Defendant, it is unclear what more Plaintiff could have done. The law, however, is clear, and Plaintiff's service by registered mail was sufficient.

Although the Court concludes that Defendant has failed to establish the threshold issue of showing a meritorious defense, it will briefly address the issues of prejudice to the Plaintiff and Defendant's culpability in the entry of default.

### ii. Prejudice to Plaintiff/Defendant's Culpability

As Plaintiffs argues in Response, they have already moved for and obtained class certification, the case is already over two years old and the longer it takes for the case  to come to conclusion, Plaintiffs' chances of obtaining any recovery lessen. ECF No. 31 at 20-21. The time lapse will have impacted discovery and allowing Defendant to reopen at this time, after proper service was made and the case is over two years old, will cause prejudice to Plaintiffs in their attempt to pursue any recovery. *See  Luo v. Qiao Xing Universal Res.,* Civ. No. 12-0045, 2018 WL 283146, at *4 (D.V.I. Jan. 2, 2018).

The third factor, whether Defendant was culpable, requires the Court to determine if he acted willfully or in bad faith. *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 657 (3d Cir.

1982). Defendant was served, or service was attempted, at both his registered home and business address.  Yet Defendant argues that somehow Plaintiffs should have known that he might be working remotely and/or that he had relocated to Switzerland. The Complaint was filed on June 19, 2018 and summonses were issued that day. ECF No. 1. On October 18, 2018, Defendants had been served. ECF No. 10 at 2. However, according to Defendant, he had moved from his registered address in Dublin to Switzerland in March 2018, (ECF No. 34 at 15) leaving no forwarding address for himself or his company. ECF No. 29-1 at 3, ECF No. 31 at 30. Defendant argues that he was under no obligation to notify anyone of his new address. The Court notes Plaintiffs' assertion that Zamir's company continues to list the business address in Dublin on the Cloud website. ECF No. 31 at 16, n.8. Defendant's conduct fits squarely within conduct intentionally designed to avoid service of process and is therefore both willful and in bad faith. *See Super Laundry Equip. Corp. v. Chan*, Civ. No. 13-7381, 2015 WL 3953887, at *5 (D.N.J. June 29, 2015) (*citing Hritz v. Woma Corp.,* 732 F.2d 1178, 1182 (3d Cir. 1984)). Coupling this with the lack of a meritorious defense leads to the clear conclusion that  no good cause exists to set aside the default.

III.     CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Motion to Set Aside Default Judgement and Dismiss Asserted by Defendant Zamir (ECF No. 29) be denied[1].

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)-(C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the

---

[1] Plaintiffs argue at  the end of their brief that Defendant failed to follow the Court's requirement that he meet and confer prior to filing any Motion to Dismiss and therefore the Motion should  be stricken as procedurally improper. ECF No. 2. While this is correct, the Court doubts that it would have had much impact on the end result and has therefore moved to the merits.

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: November 30, 2020

                                        BY THE COURT


                                        _____
                                        LISA PUPO LENIHAN
                                        United States Magistrate Judge