# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CLOUD WITH ME LTD., GILAD SOMJEN, and ASAF ZAMIR,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) Case 2:18-cv-00804-MRH-LPL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT ASAF ZAMIR'S OBJECTIONS TO
## MAGISTRATE'S REPORT AND RECOMMENDATION

Justin T. Papciak
Morella & Associates, A Professional Corporation
706 Rochester Road
Pittsburgh, PA 15237
Tel.: (412) 369-9696
Fax: (412) 369-9990
jtpapciak2@morellalaw.com

*Attorney for Defendant Asaf Zamir*

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................ 2

  I.    The Report and Recommendation's reliance on the white paper's "disclaimer" to find that the company invoked the protections of U.S. law is unsupported. ..................................... 2

  II.   Even if the Court has jurisdiction over the company, it does not have jurisdiction over Zamir. ................................................................................................................................ 5

      A.    The fact that Zamir is allegedly a "control person" is not sufficient to establish personal jurisdiction. .................................................................................................. 5

      B.    The R&R's assertion that Zamir was a "primary participant" simply repackages the control person analysis and is based on insufficient factual allegations. ............. 8

      C.    Even if minimum contacts were established, jurisdiction over Zamir would offend Due Process. ....................................................................................... 12

  III.  Service of process was not perfected, as Due Process requires, because plaintiff knew it had not served Zamir. ................................................................................................... 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*2000 Watermark Ass'n, Inc. v. Celotex Corp.*, 784 F.2d 1183, 1186 (4th Cir. 1986). .............. P3
*ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*, 2015 WL 9319235, at *2 (S.D. Tex. Dec. 23, 2015) ................................................................................................................................ p8
*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir. 1996) ................................................................................................................. pp 10, 11
*Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987)* .......................... *pp 12, 13*
*AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590–91 (9th Cir. 1996) ............ pp 6-7
*Atchley v. AstraZeneca UK Limited*, 2020 WL 4040345, at *4 (July 17, 2020 D.D.C.) ............. p9
*Best Sign Sys. v. Chapman*, 2010 WL 3025166, at *2 (D.N.J. July 30, 2010) ......................... p 15
Black's Law Dictionary 464 (6th ed. 1990) ................................................................. P3
*Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 609 (1990) ............ p5
*Calder v. Jones*, 465 U.S. 783, 789 (1984) ................................................................................. p9
*Calder v. Jones*, 465 U.S. 783, 790 (1984) ................................................................................. p7
*Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1140 (D. Colo. 2010) ........................................................................................................................ p 13
*City of Monroe Empl. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005) .......... p7
*Devon MD LLC v. DeMaio*, 2020 WL 1912108, at *1 (April 20, 2020 E.D. Pa.) ...................... p5
*FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991) ........................................................ P6
*Greene v. Lindsey*, 456 U.S. 444, 451 (1982) ........................................................................ p 14
*IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)) ................................................ p9
*In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003) .......................................... p7
International Shoe v. State of Washington, 326 U.S. 310, 316 (1945) .................................... p 12
*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) .................................................... p4
*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ............................................ p7
*King v. Prodea Systems, Inc.*, 433 F. Supp. 3d 7, 16 (D. Mass. 2019) ................................... p10
*Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991) ....................................................... p 14
*M.O. Dion and Sons, Inc. v. VP Racing Fuels, Inc.*, 2019 WL 4750116, at *6 (Sept. 27, 2019 C.D. Cal.) ............................................................................................................................ p10
*Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, 2012 WL 12785037, at *4 (D.N.J., 2012) ..................................................................................................................... p 15
*Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007) ......................................................... p9
*Meyn Am., LLC v. Tarheel Distribs., Inc.*, 36 F. Supp. 3d 1395, 1404 (M.D. Ga. 2014) .......... p11
*M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F.Supp.2d 269, 279 (D. Mass. 2008) .............. p7
*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ............................. p 14
*Olenicoff v. UBS AG*, 2010 WL 8530286, at *8-9 (CD. Cal. Mar. 16, 2010) .......................... p10
*Pawluczyk v. Global Upholstery Co., Ltd.*, 854 F. Supp. 364, 367 (E.D. Pa. 1994) ........ pp 12-13
*Pet Quarters, Inc. v. Badian*, 2006 WL 8445029, at *2 (May 25, 2006 E.D. Ark.) ................... p6
*PW Stoelting, LLC v. Levine*, 2016 WL 5921818, at *5 (E.D. Wis. 2016) .............................. p11
*Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) ........................................................................ p5
*Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) ............................................................................ p7
*Skydive Arizona, Inc. v. Quattrocki*, 2006 WL 2460595, at *7 (D. Ariz. Aug. 22, 2006) ......... p10
*Tangiers Investors,* 2011 WL 3299099, at *2 ......................................................................... p10

*Tangiers Investors, L.P. v. Americhip Intern., Inc.*, 2011 WL 3299099, at *2 (Aug. 1, 2011 S.D. Cal.) .................................................................................................................................. p 9
*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) ................................. p3, 4
*Toyz, Inc. v. Wireless Toyz, Inc.*, 2010 WL 334475, at *8 (Jan. 25, 2010 N.D. Cal.) ........... p9-10
*Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 99 (D. Del. 2002) ........................ p6
*Walden v. Fiore*, 571 U.S. 277, 287-88 (2014) ..................................................................... pp9-10
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) ................................... p12

Rules
15 U.S.C. § 770(a) ......................................................................................................................... p6

With respect, the Report & Recommendation ("R&R") misapplies, and even ignores, governing Supreme Court and Third Circuit precedent on the threshold issues of personal jurisdiction and service of process. The Report and Recommendation should be rejected and Mr. Zamir's motion granted.

Concerning jurisdiction, the R&R engages in a two-step process. First—advancing an argument that plaintiff himself never makes—it concludes that plaintiff has adequately alleged that Cloud With Me, Ltd. is subject to jurisdiction in the United States, based on a disclaimer in a "white paper" stating that the company's tokens have not been registered, approved, or disapproved by the Securities & Exchange Commission. R&R at 6-7. Then, it concludes that plaintiff has adequately alleged that the company's jurisdictional contacts can lawfully be attributed to Mr. Zamir, either because he is a "control person" under federal securities law or because he was a "primary participant" in the purported wrongdoing.

Both steps in this chain are infected by fatal legal and factual errors. The R&R's conclusion that a truthful statement that a security has not been registered or approved is actually an invocation of the jurisdiction of the laws of the United States is without support in governing case law and would lead to absurd and unsupportable results. Meanwhile, "control person" is a theory of statutory *liability*, not of constitutional permissible *jurisdiction*, and the vast majority of courts have rejected the jurisdictional theory that the R&R advances. Additionally, plaintiff's allegations are wholly insufficient to support any "primary participant" theory of jurisdiction, as even the case law cited by the R&R makes clear.

Finally, the R&R's assertion that service was sufficient even though plaintiff indisputably knew that Zamir did not reside at the Dublin address fails to satisfy Due Process, which does not permit a plaintiff to sticks its head in the sand when it *knows* that service on a defendant has failed.

1

# ARGUMENT

**I.     The Report and Recommendation's reliance on the white paper's "disclaimer" to find that the company invoked the protections of U.S. law is unsupported.**

The R&R's sole argument for finding that Cloud With Me invoked the protections of U.S. law, and thus can be sued here, is the "disclaimer" found in the white paper the company issued. R&R 7. This disclaimer stated that the tokens had "not been registered, approved, or disapproved by the US Securities and Exchange Commission, any state securities commission in the United States or any other regulatory authority" and that "the accuracy or the adequacy [*sic*] of the information contained in this white paper" had not been determined under "the U.S. Securities Act of 1933 as amended, or under the securities laws of any state of the United States or any other jurisdiction." R&R 7. The R&R notes that the Complaint alleges that tokens were payable by cryptocurrency "in North America," *id.*, and combines these two allegations, asserting that to conclude that the company was not liable to suit in the U.S. "would require the court to accept that Defendant intended to sell … tokens to residents of North America generally, but not within the U.S., which would then beg the question of why Defendant's white paper included explicit references to an American federal agency and law." R&R 8.

With respect, this is a stupendous leap of logic (one that the plaintiff doesn't even make).[1] It is wholly unsupported by citation to even a single line of case law. And it ignores the robust body of Third Circuit law cited in Zamir's motion and reply that lay out when a federal court should find jurisdiction over a foreign company that makes isolated sales into a forum from a

---

[1] Plaintiff points to this disclaimer in his complaint, but always as purported proof that the securities were unregistered, not as proof that the company was invoking the protections of U.S. law. *See* Compl. ¶¶ 38, 49, 63. It is also not the case, as the R&R asserts, that Zamir never mentioned this disclaimer in his argument. R&R 7. It is mentioned among the contentions made by plaintiff in the reply brief.

2

website. *See* Mot 7-10; Reply 4-6 (citing, inter alia, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)).

The R&R never explains how a truthful statement that a product has not been registered or approved under U.S. securities law is actually *an invocation of the protections of U.S. securities law*. The point of a disclaimer, of course, is to disclaim, not to invoke; the definition of "disclaimer" is a "disavowal, denial, or renunciation." Black's Law Dictionary 464 (6th ed. 1990). By disclaiming that its products had been approved or reviewed by the SEC or any other regulator, Cloud With Me was explicitly disavowing, denying, and renouncing both the benefits *and* the burdens of American securities law—and making that disavowal clear to potential customers around the world. This was a true statement; failing to make this statement might well have given the impression that consumers could rely on the truth-sorting and consumer protection functions of American regulators when they purchased these tokens, which might have raised an entirely different set of issues.

Disclaimers can, of course, be ineffective or legal nullities, such as some purported disclaimers of tort liability. *See, e.g*, *2000 Watermark Ass'n, Inc. v. Celotex Corp.*, 784 F.2d 1183, 1186 (4th Cir. 1986). But if so, that is because something—some conduct, some applicable body of law, some injury sustained—makes the disclaimer ineffective. The undersigned, after extensive search, has not found a single case where the fact that a disclaimer has been made *itself* makes the disclaimer ineffective. To return to the analogy to tort liability, no court has ever held that a defendant was liable in tort *because* he attempted to disclaim tort liability. But defendants are frequently found liable in tort notwithstanding their attempted disclaimers, because of some conduct *outside* the disclaimer.

That is the missing piece here. The R&R never identifies anything that Cloud With Me (much less Zamir, for the reasons explained below) actually did to invoke the protections of American law and that made its disclaimer ineffective or a nullity. As stated in the motion and reply, plaintiff's one-off purchase of a token, and his email to the company's email account (in retrospect, a blatant attempt to manufacture jurisdiction by provoking a reply), was merely a "random, isolated or fortuitous" contact, not purposeful availment of American law. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). *See also Toys "R" Us*, 318 F.3d at 455 ("minimal email correspondence, 'by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts.'"). Instead of pointing to some conduct that establishes jurisdiction notwithstanding the disclaimer, the R&R simply concludes that the disclaimer itself is the conduct that establishes jurisdiction. This is absurdly circular. Not a single case is cited—and the undersigned's extensive research has identified none—for the extraordinary proposition that disclaiming American law actually invokes it.

Further, it is unclear why the R&R finds it so puzzling that a company would seek to sell products in North American countries other than the United States while disclaiming that U.S. regulators had approved or reviewed its offerings. There are countries in North America other than the United States (*e.g.*, Canada, Mexico, the Caymans, and the Bahamas) that have investors with substantial capital. Making clear to these U.S.-adjacent investors that the tokens were not SEC-approved securities is a reasonable and prudent choice. The R&R's approach, if affirmed, would present foreign issuers with a vexing dilemma: give your investors *less* truthful information (by making no disclaimers), or give them truthful information and thereby subject yourself to being sued in an America court. If the R&R stands, issuers will undoubtedly opt for less truthful information. It is unclear how anyone is benefitted by this approach.

4

Personal jurisdiction under any theory cannot be based upon "conclusory suppositions." *Devon MD LLC v. DeMaio*, 2020 WL 1912108, at *1 (April 20, 2020 E.D. Pa.). Regarding its theory of jurisdiction-by-disclaimer, that is all the R&R offers.

## II. Even if the Court has jurisdiction over the company, it does not have jurisdiction over Zamir.

Even if the Court were to conclude that it has jurisdiction over the company based on this disclaimer, that is not sufficient to hale Zamir into court; the court must establish jurisdiction over each defendant individually. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980). The R&R does not engage in a traditional Due Process-based "minimum contacts" analysis as to Zamir, in which it identifies specific alleged conduct that shows that he personally invoked the protections of the forum. This in itself is extraordinary. Jurisdiction over the defendant is a fundamental protection afforded by the Due Process Clause; satisfying Due Process requirements is a threshold test that must be met before a court can enter a judgment. *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 609 (1990). The fact that the R&R cites almost no law relating to Due Process-based personal jurisdictional analysis (including almost none of the seminal Supreme Court decisions) is a telling sign.

Instead, the R&R relies on two separate theories by which it purports to attribute the company's conduct to Zamir for jurisdictional purposes. Both fail. The R&R's "control person" theory mistakes liability and jurisdiction, which are two separate inquiries. And its "primary participant" argument simply restates the control-person theory under another name—and is based on cursory, vague factual allegations to boot.

### A. The fact that Zamir is allegedly a "control person" is not sufficient to establish personal jurisdiction.

The Report and Recommendation argues that Cloud With Me's purported forum contacts with the United States and Zamir's "are all one and the same" since he was purportedly involved

5

with and aware of "his own company's actions that targeted the United States." R&R 7.[2] This is forthrightly an argument that because Zamir can be *liable* as an alleged "control person" under federal securities law, he is also subject to *jurisdiction* anywhere the company might be found. R&R 7 (citing 15 U.S.C. § 770(a)). The R&R acknowledges that its reliance on the "control person" theory of personal jurisdiction is "[t]he minority position." R&R 7. With respect, this substantially understates just how out of sync the R&R's position is with the Supreme Court's Due Process case law. Save a few outliers, most federal courts have rejected this theory of jurisdiction as wholly inconsistent with constitutional requirements.

The R&R puts the cart before the horse: the jurisdictional inquiry must come *before* a determination of the potential scope of liability. *See Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 99 (D. Del. 2002) ("Personal jurisdiction is an independent threshold consideration to the question of [control person] liability."). The R&R—like the few outlier courts that have accepted this theory—mistakes two separate and sequential inquiries. *See Pet Quarters, Inc. v. Badian*, 2006 WL 8445029, at *2 (May 25, 2006 E.D. Ark.) ("Control person liability and personal jurisdiction are separate issues."). Control person liability "under the securities laws is not germane to the issue of personal jurisdiction." *FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991).

Their separateness derives from the fact that while civil liability is a matter of statute, "[p]ersonal jurisdiction has constitutional dimensions," and that "source of protection for non-resident defendants" cannot be overridden "based on policy goals." *AT&T Co. v. Compagnie*

---

[2] The R&R accuses Zamir of "fail[ing] to refute or even acknowledge the numerous allegations set out in the Complaint establishing Defendants' contacts with (and intent to avail themselves of) the United States generally." R&R 5-6. With respect, this is simply not so. Because the complaint never specifically identified its jurisdictional theory, Zamir's opening brief and declaration discussed contacts with Pennsylvania and the United States generally. *See* Mot. 7 and Zamir Decl. ¶ 3. Once the plaintiff finally identified the nature of his jurisdictional averments, Zamir addressed the constitutional inadequacy of those averments at length and in specific detail. Reply 4-7.

6

*Bruxelles Lambert*, 94 F.3d 586, 590–91 (9th Cir. 1996). Because personal jurisdiction implicates constitutional protections, the decision "to make a broad group of persons liable under the securities laws cannot on its own discharge the responsibility of the federal courts to ensure" that the constitutional protections relating to personal jurisdiction are given effect. *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003). "The Fifth Amendment is made of sterner stuff." *Id.* Excepting a few outlier courts, federal courts have overwhelmingly concluded that "[t]he broad understanding of control person liability adopted by the securities laws cannot on its own support personal jurisdiction." *City of Monroe Empl. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005).

This case *especially* gives the Court little reason to embrace a "control person" theory of jurisdiction that the Third Circuit has never endorsed and that the better-reasoned decisions in multiple circuits have rejected.[3] The general rule is that an employer's jurisdictional contacts are not automatically attributed to an employee or shareholder—even a key or executive employee or majority shareholder. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (corporation's contacts could not, without more, be attributed to director); *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F.Supp.2d 269, 279 (D. Mass. 2008) ("It is axiomatic that jurisdiction over the individual

---

[3] The source of the control person theory of jurisdiction is a nearly three-decades old Ninth Circuit decision, *San Mateo Cty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1369 (9th Cir. 1992) (cited at R&R 8). *San Mateo* has been variously described as "utterly inconsistent" with "longstanding Supreme Court precedent" on personal jurisdiction, *In re Baan*, 81 F. Supp. 2d at 79–82; "misplaced," *Eaton Vance Dist., Inc. v. Grainger*, 2003 WL 1521896, at *7 (Cal. App. 2003); and was directly rejected by *In re Baan*, the Sixth Circuit in *City of Monroe*, 399 F.3d at 667, and other cases discussed herein. Even district courts within the Ninth Circuit have expressed serious doubt about the soundness of *San Mateo*'s approach to personal jurisdiction. *See, e.g.*, *In re Countrywide Fin. Corp. Mortgage-Backed Securities Litig.*, 2012 WL 1322884, at *8 (April 16, 2012 C.D. Cal.) (under Supreme Court precedent, court must "evaluate an officer defendant's connection with a forum separately from the allegations of control").

officers of a corporation may not be based on jurisdiction over the corporation."); *ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*, 2015 WL 9319235, at *2 (S.D. Tex. Dec. 23, 2015) ("An individual's status as an officer, director, or majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction.").

The point is simply that the strong background presumption of federal constitutional law is that the forum contacts of corporations, their owners, their employees, their shareholders, and their managers are *not*, as the R&R would have it, "all one and the same." R&R 7. To overcome this background presumption, some *sui generis* "special circumstance"—such the corporation actually being the defendant's alter ego—ought to be advanced, with factual averments that are detailed enough to "nudge[] [the] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And yet here, plaintiff offers nothing more than garden-variety allegations, bereft of any factual detail, that the individual defendants "ran," or "closely managed," or "controlled" Cloud With Me. Compl. ¶¶ 7, 9, 20-21, 36-37. Even the R&R is forced to acknowledge that plaintiff "does not take pains to distinguish between the actions of each of the three Defendants that constitute contact with the United States." R&R 7-8. These exceedingly thin, cursory allegations are not sufficient ground for this Court to embrace a "control person" theory of personal jurisdiction that has never been embraced by the Third Circuit, has been explicitly rejected by other federal appellate courts, and is "utterly inconsistent," *In re Baan*, *supra*, with the Due Process-based approach to personal jurisdiction that the Supreme Court has consistently directed federal courts to take.

      **B.**    **The R&R's assertion that Zamir was a "primary participant" simply repackages the control person analysis and is based on insufficient factual allegations.**

Apparently in the alternative, the R&R also argues that the Court has jurisdiction over Zamir because he was a "primary participant" in the purported wrongdoing that gives rise to this

suit. (Again, the R&R is advancing an argument that plaintiff himself never made; the complaint never uses the phrase "primary participant" and the plaintiff's opposition never made this argument.) The only factual support advanced for this argument is that Zamir "founded that company, served as its [chief technology officer], and was therefore unquestionably involved in the alleged wrongdoing." R&R 9.

This is nothing more than a gussied-up version of the "control person" theory of jurisdiction—that Zamir is liable for suit because he co-founded and was a key executive of the company. Zamir's executive position is an insufficient basis for finding that he was a primary participant in the company's alleged wrongdoing. *See Tangiers Investors, L.P. v. Americhip Intern., Inc.*, 2011 WL 3299099, at *2 (Aug. 1, 2011 S.D. Cal.) ("simply being the CEO is not enough to establish" that a person was a primary participant).

This is because even "primary participant" jurisdiction over an individual defendant must still be consistent with Due Process requirements, which require conduct that is "expressly aimed" at the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Atchley v. AstraZeneca UK Limited*, 2020 WL 4040345, at *4 (July 17, 2020 D.D.C.). Thus, it is not enough for a plaintiff to allege that the defendant's employer engaged in tortious conduct and that plaintiff was harmed in a particular forum. Rather, plaintiff must successfully allege that the defendant *himself* "'manifest[ed] behavior intentionally targeted at and focused on' the forum." *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007) (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). Under *Calder* (which is where "primary participant" jurisdiction derives), this inquiry focuses not on the effect of that conduct on the plaintiff in a forum, but on the defendant's conduct and the extent to which it is "expressly aimed" at that forum. *Calder*, 465 U.S. at 288; *see also Walden v. Fiore*, 571 U.S.

9

277, 287-88 (2014). But Plaintiff has failed to allege any facts showing that Zamir intentionally or expressly aimed *any* conduct at the United States. *See* Reply 3-5.

Moreover, allegations that a defendant was a primary participant in a company's wrongdoing cannot rest on "vague, blanket allegation[s]." *Toyz, Inc. v. Wireless Toyz, Inc.*, 2010 WL 334475, at *8 (Jan. 25, 2010 N.D. Cal.). "Rather, the pleading must contain plausible, factual allegations" of wrongdoing by the individual defendant. *M.O. Dion and Sons, Inc. v. VP Racing Fuels, Inc.*, 2019 WL 4750116, at *6 (Sept. 27, 2019 C.D. Cal.).[4]

The allegations in the complaint (to say nothing of the argument in plaintiff's opposition, which never even advances this theory of jurisdiction) fall far short of this requirement. The thinness of plaintiff's "primary participant" allegations is amply demonstrated by comparing them to the only case the R&R cites in support of this theory. In *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir. 1996) (cited at R&R 9), the Tenth Circuit affirmed a finding of personal jurisdiction over a corporate executive based on his participation in securities violations by the company. The forum contacts by the defendant in that case (many of which he admitted) were extensive: Knowles "visited the United States 'on a number of occasions' for purposes of meeting with investment clients; … 'signed a handful of letters and checks'" directed to the U.S. that were relevant to the violations; "opened a brokerage trading account for [the company]" in the U.S. to facilitate the securities violations; and engaged in "active

---

[4] *See also King v. Prodea Systems, Inc.*, 433 F. Supp. 3d 7, 16 (D. Mass. 2019) (same); *Tangiers Investors,* 2011 WL 3299099, at *2 (rejecting "primary participant" jurisdiction based on allegation that defendant "knew or should have known" about company's wrongdoing); *Olenicoff v. UBS AG*, 2010 WL 8530286, at *8-9 (CD. Cal. Mar. 16, 2010) (no personal jurisdiction over foreign officers and directors of foreign bank where the sole individualized allegations against the foreign defendants were that they: 1) resided abroad; 2) were officers, mangers, or directors; and 3) "conducted business in the U.S."); *Skydive Arizona, Inc. v. Quattrocki*, 2006 WL 2460595, at *7 (D. Ariz. Aug. 22, 2006) (granting motion to dismiss for lack of personal jurisdiction because conclusory allegations of ownership were insufficient).

10

trading through additional American brokerage accounts and the wiring of proceeds from stock sales" back to the Bahamas. *Id*. at 417.

In *Knowles*, then, liability was not based solely on the individual defendant's position within the company and the vague assertion that, therefore, he must have been involved in the wrongdoing. Instead, there were specific allegations about specific activities (including visiting the forum and directing communications and financial transactions into it, and setting up accounts in the forum to facilitate the wrongdoing) that the defendant undertook on the company's behalf in or directed to the United States. Other cases are similar. *See, e.g*., *PW Stoelting, LLC v. Levine*, 2016 WL 5921818, at *5 (E.D. Wis. 2016) (individual defendant "signed both distribution agreements" with a U.S.-based company, "consistently served as the point of contact between" the two companies, personally contacted the U.S.-based company to enter "change orders," and attended the plaintiff's "distributor meeting in October 2014 to give a presentation"); *Meyn Am., LLC v. Tarheel Distribs., Inc*., 36 F. Supp. 3d 1395, 1404 (M.D. Ga. 2014) (defendant company's president was a primary participant in the theft of trade secrets, since he hired a competitor's old employee, was copied on correspondence where that employee shared the allegedly stolen trade secrets, and had remarked that the company was going to "make a lot of money" thanks to employee's access to competitor's trade secrets).

Nothing of the sort is alleged here. Zamir has visited the United States only three times as an adult, not for purposes related to this case. Zamir Decl. ¶ 3. There is no allegation that he signed documents or checks in, or directed them to, the United States or that he directed communications into the United States. He has declared under oath that Cloud With Me's marketing efforts were generally directed at Europe and Asia, not the United States. Zamir Decl. ¶ 9. As to the white paper's "disclaimer" that the R&R identifies as the sole specific forum contact with the United

11

States, plaintiff never specifically alleges that Zamir wrote this white paper, signed it, directed the inclusion of the disclaimer, or directed its distribution to investors in the United States. (In fact, it would be highly unlikely that Zamir, the chief technology officer of the company responsible for building the software, had anything to do with marketing or legal matters.) Again, even the R&R is forced to admit that plaintiff never singles out Zamir as doing anything in particular, save being the company's chief technology officer. R&R 7-8. These are manifestly insufficient allegations that Zamir was a "primary participant" in the conduct that gives rise to jurisdiction over Cloud With Me.

### C. Even if minimum contacts were established, jurisdiction over Zamir would offend Due Process.

Finally, *even if* plaintiff has plausibly alleged that Zamir has the requisite "minimum contacts," personal jurisdiction fails because its exercise under these "circumstances would offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987)* (quoting *International Shoe v. State of Washington, 326 U.S. 310, 316 (1945)*. The court should decline jurisdiction over the defendant, even if minimum contacts are shown, if factors such as the burden on the defendant, the interests of the forum, the plaintiff's interest in obtaining relief; the "judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies" weigh in favor of doing so. *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The Supreme Court has noted that *"[g]reat care and reserve* should be exercised when extending our notions of personal jurisdiction into the international field," *id*. at 115, and that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," *id.* at 114. *See also Pawluczyk v. Global Upholstery*

12

*Co., Ltd.*, 854 F. Supp. 364, 367 (E.D. Pa. 1994) (declining jurisdiction and noting the "unique burden" on the foreign alien in defending litigation in the United States) (citing *Asahi*, *supra*).

The R&R fails to take into account any of these considerations, especially the unique burden placed on Zamir by being forced to defend a lawsuit in a foreign country in which he has no assets, no property, and no business relationships (and especially in a state he's never been in). This is especially so given the thinness of the allegations that Zamir "directed" any conduct at all to the United States. In fact, the conduct of "the Defendants" (not Zamir specifically) that plaintiff highlights in his opposition—such as issuing press releases, tweeting, and conducting a road show for investors—all took place overseas, in Europe and Asia. None of it occurred in or even was directed at the United States, highlighting just how unjust it would be to hale Zamir into court in this country. *See* Reply 7-8 ("What is missing in plaintiff's complaint is any allegation that all the 'releasing,' 'issuing,' and 'posting' Mr. Zamir supposedly did was directed ***to the United States***.").

Meanwhile, plaintiff's fears of being unable to recover damages are groundless: there are still two co-Defendants from whom recovery can be obtained. And while the United States undoubtedly has an interest in seeing that its securities laws are enforced, the European Union has an equally compelling interest in protecting its residents from being haled into court in foreign countries over conduct that took place within its own borders. The interests of the United States are especially attenuated here, where none of the defendants are American residents.

There is often "an interplay between minimum contacts and reasonableness," where a weak showing of minimum contacts can be outweighed by a strong showing of reasonableness under the *Asahi* fairness factors, or, "[c]onversely, a strong showing of minimum contacts may be outweighed by a weak showing of reasonableness and may disfavor jurisdiction." *Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1140 (D. Colo. 2010). Here,

plaintiff has made at best a weak showing of minimum contacts and a weak showing of reasonableness. Even if the Court were to determine that minimum contacts have been shown— and it should not—jurisdiction should be declined as unfair and unreasonable.

### III.   Service of process was not perfected, as Due Process requires, because plaintiff knew it had not served Zamir.

The R&R also asserts that because plaintiff met the technical requirements for service of an Irish corporation, it satisfied the Due Process requirements for serving an individual defendant as well. But these are not the same thing. As the authorities cited in Zamir's Motion (at 10-13) and Reply (at 7-10), technical compliance with service requirements is unavailing if a plaintiff actually knows that service was not perfected. *Citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950); *Greene v. Lindsey*, 456 U.S. 444, 451 (1982); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991). Plaintiff here knew that service on Zamir was not perfected, because his own process server said so in a sworn declaration. *See* D.E. 10 (affidavit of service by mail to a Dublin address, despite knowing that Zamir had no presence at that address) and had Plaintiff even gone so far as doing a google search[5] or looked on Linkedin[6] they would have seen that Mr. Zamir was based near Zurich, Switzerland in Zug. Moreover, despite all the rhetorical questions the R&R raises at page 12 about the company's failure to update its address, a critical element is missing: any statute, law, regulation, or otherwise that suggests that *Zamir* was under any obligation to leave a forwarding address when he took up residence in Switzerland.

Ultimately, the R&R concludes that "it is unclear what more could have been done to effect service on Defendant." R&R 10. But as his Second Declaration makes clear, Zamir obtained a Swiss entry card stating his address when he took up residence in that country in March 2018. If

---

[5] https://www.kidsil.net/2018/04/moving-to-crypto-valley/
[6] https://www.linkedin.com/in/asafzamir/

14

he has been hiding, he has done a poor job of it. Plaintiff found Zamir's old address in Ireland; and never explains why it couldn't find his new address in Switzerland. No "globe-trotting private investigator," R&R 13, was necessary to find and perfect service, just a reasonably competent person armed with Google. The fact that plaintiff apparently could not be bothered to make even a cursory attempt strongly suggests that his method of service was not "reasonably calculated, under all the circumstances, to apprise [Zamir] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane*, 339 U.S. at 314.

Finally, the R&R asserts that setting aside the default will prejudice plaintiff "in their attempt to pursue any recovery." R&R 13. It is not clear why this should be so. Two co-Defendants remain to recover from, should any recovery be warranted. But in any event, "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice required to satisfy this element." *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, 2012 WL 12785037, at *4 (D.N.J., 2012) (citing *Best Sign Sys. v. Chapman*, 2010 WL 3025166, at *2 (D.N.J. July 30, 2010)). That is especially so when, as here, plaintiff has failed to satisfy threshold constitutional requirements.

## CONCLUSION

Plaintiff has brought forward no evidence, and has not even plausibly alleged, that Asaf Zamir expressly aimed any conduct at the United States. Moreover, service of process was plainly insufficient, since plaintiff knew that Mr. Zamir did not reside or work at the address it served in Dublin. The R&R's attempts to save plaintiff's wholly insufficient allegations fail. Considering the foregoing, the default judgment should be set aside and the complaint against Mr. Zamir dismissed.

1

DATED: December 14, 2020          Respectfully submitted,

*/s/ Justin T. Papciak*
Justin T. Papciak
Morella & Associates, A Professional Corporation
706 Rochester Road
Pittsburgh, PA 15237
Tel.: (412) 369-9696
Fax: (412) 369-9990
jtpapciak2@morellalaw.com

*Attorney for Defendant Asaf Zamir*

1